IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SYNTHIA PITTS ALFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 23-1125 ) |
| MARTIN O'MALLEY,[1] *Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | ) ) |

O R D E R

AND NOW, this 29th day of August, 2024, upon consideration of the parties' cross-motions for summary judgment, the Court, after reviewing of the Commissioner of Social Security's final decision denying Plaintiff's claim for supplemental security income ("SSI") under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.[2] *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it

---

[1] Martin O'Malley is substituted as the defendant in this matter, replacing former Acting Commissioner Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

[2] Defendant asks the Court to tax costs against Plaintiff but does not advance an argument in support of that request. Accordingly, the Court will award no costs. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

1

would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[3]

---

[3]   While Plaintiff purports to raise numerous issues, these various issues can generally be placed within two larger arguments.  First, she argues that the Administrative Law Judge ("ALJ") erred in finding that her occipital neuralgic and migraine headaches did not constitute severe impairments and failed to adequately account for these headaches in formulating her residual functional capacity ("RFC").  Second, she asserts that the ALJ erred in applying Listings 1.15, 1.16, and 1.18, which were not in effect at the time of Plaintiff's application, rather than Listings 1.02 and 1.04, which were.  The Court finds that there is no merit to either argument and therefore will affirm.

In regard to her headaches, Plaintiff argues that the ALJ erred in not finding this condition to constitute a severe impairment at Step Two.  However, the Step Two determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment.  *See Bradley v. Barnhart*, 175 Fed. Appx. 87, 90 (7th Cir. 2006).  In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe.  *See Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); *Lee v. Astrue*, Civ. No. 06-5167, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); *Lyons v. Barnhart*, Civ. No. 05-104, 2006 WL 1073076, at *3 (W.D. Pa. Mar. 27, 2006); *Gerald v. Berryhill*, No. 3:17-CV-00575, 2018 WL 7364649, at *5 (M.D. Pa. Oct. 12, 2018), *report and recommendation adopted,* No. CV 3:17-575, 2019 WL 719829 (M.D. Pa. Feb. 19, 2019).  Since Plaintiff's claim was not denied at Step Two, it does not matter whether the ALJ correctly or incorrectly found her headaches to be non-severe.

What matters is whether the ALJ properly accounted for any symptoms from her alleged headaches in formulating Plaintiff's RFC.  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996).  *See also* 20 C.F.R. § 416.945(a)(2).  "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." S.S.R. 96-8p at *5.  Accordingly, merely because the ALJ did not find Plaintiff's headaches to be severe does not mean that this impairment could not still have affected Plaintiff's RFC.  However, the ALJ specifically addressed Plaintiff's allegations regarding her headaches in discussing how he formulated her RFC (R. 23), and substantial evidence supports his decision not to add any additional limitations in the RFC to account for these headaches.

The Court is not persuaded by Plaintiff's arguments to the contrary.  Her allegations regarding the severity and persistence of her headache symptoms are based almost entirely on her own testimony.  Since the nature of Plaintiff's alleged limitations are based largely on her own statements, the Court first notes that an ALJ's consideration of a claimant's testimony is still often referred to as a "credibility" determination, although that term has been eliminated from

the Commissioner's policy concerning "subjective symptom evaluation." *Schneider v. Berryhill*, No. CV 17-1299, 2019 WL 698471, at *2 (W.D. Pa. Feb. 20, 2019) (citing S.S.R. 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016)) (explaining S.S.R. 16-3p "clarif[ied] that the subjective symptom evaluation is not an examination of an individual's character"). The manner of the evaluation, though, remains unchanged in most ways, and many concepts that applied when the evaluation was considered to be one of credibility continue to apply now. This includes the significant deference given to an ALJ's evaluation of a claimant's subjective testimony. *See Paula R. v. Comm'r of Soc. Sec.*, No. CV 20-18808 (RBK), 2022 WL 950242, at *5 (D.N.J. Mar. 30, 2022) ("Credibility determinations are 'virtually unreviewable on appeal.'" (quoting *Hoyman v. Colvin*, 606 Fed. Appx. 678, 681 (3d Cir. 2015))). Such deference is warranted here.

Plaintiff asserts that her testimony is consistent with records from her treating physicians, particularly Jimmy Wolfe, M.D., Mark Gottron, D.O., and Hyoung D. Kim, M.D., FACP. She further argues that the ALJ failed to address or weigh Dr. Wolfe's "opinion" regarding her headaches. However, the ALJ expressly discussed Dr. Wolfe's records, accurately noting that Dr. Wolfe had indicated that Plaintiff's headache symptoms had a positive response to conservative treatment, which included only the prescribed use of a special pillow and Imitrex. (R. 18). Although Plaintiff suggests that her own testimony that her medication was not working (R. 55) supplemented Dr. Wolfe's statements, as noted, the ALJ did not fully credit her testimony. Moreover, nothing in Dr. Wolfe's records can be construed as an opinion as to Plaintiff's functional limitations that required any further discussion. (R. 646-55). As for Drs. Gottron and Kim, they provided no diagnosis or treatment for headaches but, rather, merely noted that Plaintiff had complained of one. (R. 688-93, 717).

Plaintiff further argues that the ALJ inappropriately conflated her occipital neuralgic headaches and her migraine headaches instead of addressing them as different conditions. However, the ALJ acknowledged that the source of Plaintiff's headaches had been diagnosed somewhat differently, noting that it was not clear whether her headaches were primarily migraines or occipital neuralgia related, but that "[h]owever, it is not necessary to make this determination." (R. 18). He was correct; the issue is not the existence or precise nature of a diagnosis that matters, but what functional limitations are caused by the condition. *See Walker v. Barnhart*, 172 Fed. Appx. 423, 426 (3d Cir. 2006); *Phillips v. Barnhart*, 91 Fed. Appx. 775, 780 (3d Cir. 2004). Substantial evidence, including discussion of the benign medical history set forth above, supports the ALJ's finding that whatever symptoms Plaintiff experienced from her headaches was sufficiently covered by the RFC.

Plaintiff's second argument regarding the retroactive application of the amended listings fares no better. As part of the Social Security Administration ("SSA")'s sequential analysis, an ALJ must determine, at Step Three, whether the claimant's impairment(s) meets or equals the criteria for a listed impairment as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. This determination is critical, because if a claimant meets a listing, a finding of disability is automatically directed. *See id.* at § 416.920(a)(4)(iii). In the decision under review here, issued on February 22, 2022, the ALJ considered whether Plaintiff's impairments met or medically equaled Listings 1.15, 1.16, and 1.18 which apply to musculoskeletal disorders, ultimately finding that the listings had not been met or equaled. Plaintiff argues, though, that 1.15, 1.16, and 1.18 were not the appropriate listings here because they were implemented after the

3

application date in this case and after this matter was remanded to the ALJ from the Appeals Council. The Court disagrees and finds that the ALJ considered the proper listings and that, in any event, any such error would have been harmless.

Plaintiff initially filed her application for SSI on September 18, 2018. The ALJ denied her request on February 2, 2021, finding, *inter alia*, that Plaintiff's impairments did not meet or equal musculoskeletal listings 1.02 and 1.04. Plaintiff requested and received review from the Appeals Council, and on July 14, 2021, the Council remanded the matter to the ALJ for further consideration. In the meantime, the musculoskeletal listings were amended, resulting in Listings 1.02 and 1.04 being replaced with 1.15, 1.16, and 1.18, effective April 2, 2021. *See* 85 F.R. 78164-01 (Dec. 3, 2020). In denying Plaintiff's claims on remand, the ALJ did not consider Plaintiff's impairments in light of the previous listings but under the new ones. In fact, he expressly noted, "As of April 1, 2021, the musculoskeletal listings have been revised, and 2 new listings, 1.15 and 1.16 replaced the former listing 1.04." (R. 18). He also considered new Listing 1.18 relating to major joint abnormality in an extremity instead of the prior listing for major joint abnormality – 1.02. (R. 20).

Plaintiff, as noted, has contended that the listings in effect at the time of her application and the time of the remand should continue to govern. However, courts have largely rejected this argument. For instance, in *Cox v. Kijakazi*, 77 F.4th 983 (D.C. Cir. 2023), the appellate court reversed the district court's decision that the version of Listing 12.05 in effect at the time the claimant filed her claim must be applied in her case, instead holding that application of the amended version of Listing 12.05 to the claimant's pending claim was not retroactive. *See id.* at 985-86. In so doing, it acknowledged that Congress had not granted the SSA the power to enact rules that are retroactive in effect, so the court went on to analyze the factors for determining whether a law or regulation would have retroactive effect set forth in *Landgraf v. USI Film Prod.*, 511 U.S. 244 (1994). The court in *Cox* held that the application of the new version of the listings did not impair the claimant's vested rights (*i.e.*, rights already possessed when she filed the claim), did not impose any new duty or obligation, and did not deny the claimant fair notice, disrupt reasonable reliance, or impair settled expectations. *See* 77 F.4th at 990-93. The court emphasized that the claimant's "filing of her application for SSI benefits itself did not vest her with any legal right to have her claim decided under the 2014 Listings, as opposed to the 2017 Listings." *Id.* at 991. The court further observed:

> The Social Security Act does not provide claimants with the right to have their claims adjudicated under any particular Listings or similar regulatory interpretation upon application. Rather, the statute and implementing regulations simply instruct the Administration to award benefits only to claimants it finds to be disabled.

*Id.* It also noted that a change in the listing was not dispositive of the claimant's case, since the listings merely "operate as a presumption of disability that makes further inquiry unnecessary," and that she could still establish that she was disabled without invoking the listing. *Id.* at 992.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 8) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED as set forth herein.

s/Alan N. Bloch
United States District Judge

ecf:    Counsel of record

---

While the D.C. Circuit Court's decision is not binding on this Court, the Court finds the rationale compelling. As the D.C. Circuit explained, Plaintiff had no vested right to proceed under any specific version of the listings, the new listings imposed no new burdens or obligations on her, and she was not deprived fair notice and cannot be said to have "relied" on Listings 1.02 or 1.04 in any meaningful way. The Court therefore agrees that application of Listings 1.15, 1.16, and 1.18 was not retroactive. In so doing, this Court also agrees with the other circuit courts that have found similarly. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006); *McCavitt v. Kijakazi*, 6 F.4th 692 (7th Cir. 2021); *Jones v. O'Malley*, 107 F.4th 489, 494-97 (5th Cir. 2024). The Court further notes that this is consistent with the language in the *Revised Medical Criteria for Evaluating Musculoskeletal Disorders* providing:

> As we noted in the dates section of this preamble, these final rules will be effective on April 2, 2021. We delayed the effective date of the rules to give us time to update our systems, and to provide training and guidance to all of our adjudicators before we implement the final rules. The current rules will continue to apply until the effective date of these final rules. When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date.

85 F.R. 78164-01. This language clearly states that the new listings will apply to claims pending after the effective date.

In any event, Plaintiff offers no argument as to how or why her conditions would have met or equaled the prior listings even if they had applied. The Court's review of the requirements of previous Listings 1.02 and 1.04 and of the new Listings 1.15, 1.16, and 1.18, as well as the record evidence, likewise has not demonstrated that the outcome of this case would have been different had the older listings been used. Therefore, although the ALJ correctly applied the new listings, the issue is ultimately moot.

Accordingly, the Court finds that the ALJ applied the correct legal standards and that substantial evidence supports his decision. It will therefore affirm.